IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL CUNNINGHAM**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-CV-59-L** |
| | § | |
| **CITY OF BALCH SPRINGS, JAMES** | § | |
| **YOUNG, JONATHAN HABER,** | § | |
| **WILLIAM MORRIS a/k/a Ed Morris,** | § | |
| **and EDWARD ORTEGA,** | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Defendant City of Balch Springs' 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (Doc. 21); and Defendants Young, Haber & Morris' 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (Doc. 23), both filed October 30, 2014. After careful review of the motions, responses, reply, record, and applicable law, the court **grants** Defendant City of Balch Springs' 12(b)(6) Motion to Dismiss; **grants** Defendants Young, Haber & Morris' 12(b)(6) Motion to Dismiss; and **remands** the state law claim against Defendant Edward Ortega to the 14th Judicial District Court, Dallas County, Texas.

**I.     Background**

The factual background and procedural history in this case are set forth in *Cunningham v. City of Balch Springs*, 2014 WL 4851576 (N.D. Tex. Sept. 30, 2014) (Lindsay, J.) ("*Cunningham I*"), which the court incorporates by reference as if herein fully set forth. In *Cunningham I*, the court dismissed Plaintiff's § 1983 claims against the City and the Individual Defendants but

allowed Plaintiff an opportunity to replead these claims.[1]  *See Cunningham I*, 2014 WL 4851576

at *7.  On October 21, 2014, Plaintiff Michael Cunningham ("Plaintiff" or "Cunningham") filed

his First Amended Complaint asserting claims under 42 U.S.C. § 1983 against the City of Balch

Springs ("the City"), James Young ("Young"), Jonathan Haber ("Haber"), and William Morris,

a/k/a Ed Morris ("Morris") (collectively, the "Individual Defendants"), as well as a state law claim

for assault against Edward Ortega ("Ortega").  *See* First Am. Compl. (Doc. 19).

As alleged in the First Amended Complaint, this § 1983 action arises from the December

2011 arrest of Plaintiff by City of Balch Springs police offers who, acting pursuant to a warrant,

arrested him at his home and charged him with making a false police report.  Specifically, Plaintiff

alleges that on December 3, 2011, Defendant Ortega, a City employee, assaulted him outside a

One Stop convenience store.  *See* First Am. Compl. ¶¶ 10-34.  Plaintiff alleges that Ortega's assault

was captured on surveillance videotape by a store camera (hereinafter, the "One Stop video") and

shows Ortega approach Plaintiff with a lead or metal pipe, and raise the pipe as if he were about

to attack Plaintiff.  *Id.* ¶ 11.  Plaintiff alleges that out of fear for his safety, and believing he was

in imminent danger of severe bodily injury, he ducked and tried to protect himself from the attack.

*Id.*  Plaintiff alleges he then contacted the City's police department to make a complaint against

Ortega for assault.  *Id.* ¶ 17.  Plaintiff, also a City employee, alleges that after reporting the incident,

he went to work and his superiors told him to go to the City's police station to give a statement,

---

[1] In *Cunningham I*, the court also granted the City's and Individual Defendants' respective motions to dismiss Plaintiff's state law claims, with the exception of the malicious prosecution claim, and dismissed those claims with prejudice. *Cunningham I*, 2014 WL 4851576 at *7-8.  Although Plaintiff pleads a claim for malicious prosecution in his First Amended Complaint, he has since abandoned this claim.  *See* Pl.'s Opp'n to Defs.' Mot. to Dis. ¶ 2 (Doc. 27) ("Plaintiff does not object to the dismissal of the State law claim for malicious prosecution.").  Finally, the court did not issue any ruling pertaining to Plaintiff's state law assault claim against Defendant Ortega, noting that Ortega, unlike the City and the Individual Defendants, did not file a dispositive motion.

even though he had already provided a statement to City police officer Sergeant Ramsey. *Id.* ¶ 21. Plaintiff alleges that when he arrived at the police station he was placed in a small interrogation room and confronted by Defendants Haber and Young, who questioned him about the incident, showed him the One Stop video, accused him of having a selective memory and of not recounting the incident exactly as it was captured on the One Stop video, and accused him of making a false police report. *Id.* ¶¶ 21-28.

With regard to procurement of the arrest warrant, Plaintiff alleges that "upon further investigation and discovery, evidence will show that Young and/or Haber and/or other police officers with the City of Balch Springs Police Department knowingly filed a false affidavit to secure an arrest warrant for [Plaintiff's] arrest when the affiant(s) 1) knew it was false, or 2) would have known it was false had the affiant not recklessly disregarded the truth." *Id.* ¶ 29. Plaintiff further alleges that even though the One Stop video corroborates his assault claim, "somehow, the Balch Springs police secured an arrest warrant to have [Plaintiff] arrested for making a false report" and "[p]resumably the warrant was obtained by sworn statements made by Balch Springs police officers in an affidavit, claiming that [Plaintiff] made a false report to the police regarding the assault by Ortega." *Id.* ¶¶ 30-31. Plaintiff also alleges that, "upon further investigation and discovery the evidence will show that the warrant for arrest was obtained by Young and/or Haber and/or other City of Balch Springs police officers after they knowingly and intentionally, or with reckless disregard for the truth, presented to a Judge an affidavit that contained misleading and/or incorrect assertions of fact." *Id.* ¶ 33. Plaintiff alleges that all charges against him were dropped after the Dallas County Criminal District Attorney's Office declined to pursue any criminal action

against him. *Id.* ¶ 34.  Plaintiff alleges that the conduct of Defendants Haber and Young violated his Fourth Amendment right to be free from unlawful seizure and arrest. *Id.* ¶ 36.

Plaintiff also alleges that after he reported the assault to Sergeant Ramsey, Ortega was arrested based on the evidence in the One Stop video. *Id.* ¶ 47.  Plaintiff alleges that Sergeant Ramsey was then "disciplined and/or placed on leave from the Balch Springs Police Department in connection with the assault investigation and subsequent arrest of Ortega." *Id.* ¶ 48.

With regard to the City, Plaintiff alleges that his Fourth Amendment constitutional right to be free from unlawful seizure was violated "with the knowledge, authority, and/or permission, either express of implied, of Morris and [the City]," or was done "in accordance with policy, practice, or custom of the police officers of the [City], acting under the direction, leadership and authority of Morris, as Chief of Police and City Manager[.]" *Id.* ¶ 46.  Plaintiff further alleges that through Morris, the violations of Plaintiff's constitutional rights were ratified. *Id.* ¶ 49.  Plaintiff alternatively argues that his constitutional rights were violated "due to a failure on the part of Morris and/or [the City] to properly supervise and/or train [its] officers, and/or the acquiescence of Morris and [the City] in unconstitutional behavior of subordinate officers." *Id.* ¶ 46.

The City and Individual Defendants move anew to dismiss, and Plaintiff opposes the motion.  The court first sets forth the applicable legal standard for dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.      Rule 12(b)(6)—Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v.*

*Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the

plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

**Memorandum Opinion and Order - 6**

### III.    Analysis

The court now turns to whether Plaintiff's amended § 1983 allegations are sufficient to state a claim against the City and the Individual Defendants that is "plausible on its face." *Twombly*, 550 U.S. at 570.  The court first considers the amended allegations against the City.

### A.  Plaintiff's Amended § 1983 Claim Against City

In *Cunningham I*, the court granted the City's motion to dismiss Plaintiff's § 1983 claims, finding Plaintiff's allegations against the City to be "conclusory and general," and "woefully deficient."  *Cunningham I*, 2014 WL 4851576 at *6 (quoting *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citation omitted) ("The description of a policy or custom and its relationship to the underlying violation . . . cannot be conclusory; it must contain specific facts.")).  The City contends that the amended pleadings fail to cure the deficiencies set forth in *Cunningham I* and that Plaintiff's § 1983 claims against it should therefore be dismissed.  *See* Def. City's Br. Supp. Mot. to Dis. ("City's Br.") (Doc. 22).  In response, Plaintiff points the court to paragraphs 46 through 49 of the First Amended Complaint and argues that the allegations are sufficient to state a claim against the City.  Pl.'s Resp. Br.  ¶¶ 4, 16 (Doc. 28).

### 1.  Applicable Law

It is well-settled law that a section 1983 lawsuit brought against a municipality for the deprivation of a constitutional or federally protected right must be based upon an official policy or custom of that municipality.  *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).  Official policy is defined as:

1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.      A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Id.*

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official.  *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984).

The official complained of must possess

[f]inal authority to establish [city] policy with respect to the action ordered. . . . The official must also be responsible for establishing final government policy respecting such activity before the [city] can be held liable. . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986).  An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee, agency or board and *cannot* review the action or decision of the employee, agency or board.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

To support a constitutional or federal claim based on a policy or custom of a city, a plaintiff must plead facts that show: "1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation."  *Meadowbriar Home for Children Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996) (citation omitted).

**Memorandum Opinion and Order - 8**

A failure to train allegation can be the basis for liability under 42 U.S.C. §1983 only if the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To establish this claim, a plaintiff must plead facts that show that "(1) the training procedures were inadequate; (2) the [City's] policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [his] injury." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (citation omitted).

### 2. Discussion

In his First Amended Complaint, Plaintiff alleges that his constitutional right to be free from arrest without probable cause was violated "with the knowledge, authority, and/or permission, either express of implied, of Morris and [the City]," or was done "in accordance with policy, practice, or custom of the police officers of the [City], acting under the direction, leadership and authority of Morris, as Chief of Police and City Manager[.]" First Am. Compl. ¶ 46. Plaintiff further alleges that through Morris, the violations of Plaintiff's constitutional rights were ratified. *Id.* ¶ 49. Plaintiff alternatively alleges that his constitutional rights were violated "due to a failure on the part of Morris and/or [the City] to properly supervise and/or train [its] officers, and/or the acquiescence of Morris and [the City] in unconstitutional behavior of subordinate officers." *Id.* ¶ 46.

Having reviewed these amended allegations, the court agrees with the City that Plaintiff's amended § 1983 allegations fail to cure the pleading deficiencies previously noted by the court in *Cunningham I*. First, Plaintiff has failed to allege facts supporting the existence of an official policy or custom. Even assuming the truth of Plaintiff's allegations, he has only alleged one

episode in which the City of Balch Springs police officers allegedly engaged in such unlawful conduct.  Allegations of one incident are insufficient to allege a policy or custom that is so common and well-settled as to constitute a custom that represents municipal policy.  *See generally Renfro v. City of Kaufman*, 27 F. Supp. 2d 715, 717 (N.D. Tex. 1998) (Fish, J.) (citing *Worsham*, 881 F.2d at 1339-40)) ("A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority.").  Further, Plaintiff alleges no facts that show what training police officers received or how that training is insufficient, let alone that a policymaker was deliberately indifferent in adopting any training policy, or that any inadequate training policy directly caused his injuries.  *See Carnaby*, 636 F.3d at 189.  Moreover, Plaintiff does not allege or set forth any allegations that Morris has policymaking authority or that the City has delegated such authority to him.  In addition, Plaintiff fails to adequately allege that a final policymaker had actual or constructive knowledge of any official policy or custom, or that the City's final policymakers were deliberately indifferent to a known or obvious risk that these customs would result in deprivations of rights.  *See Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2011) (and cases cited therein).

In reviewing Plaintiff's factual allegations against the City as true and in the light most favorable to him, the court determines that Plaintiff has merely set forth allegations that the City's alleged inaction constituted negligence or, possibly, gross negligence.  The general and conclusory allegations asserted by Plaintiff are well below what is necessary for the court to infer that he was injured as a result of an unconstitutional policy or custom of the City.  "Gross negligence" is not the same as "deliberate indifference."  The terms "gross negligence" and "deliberate indifference"

are sometimes confused and interchanged; however, "deliberate indifference" is a stricter standard. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). "Gross negligence" is a heightened degree of negligence, whereas "deliberate indifference" is a "lesser form of intent." *Id.* at n.7 (citation omitted). A showing of heightened negligence is insufficient to state a claim for deliberate indifference. *Bryan Cnty.*, 520 U.S. at 407.

"The deliberate indifference standard is a high one." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. The term is best summarized as follows:

> To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety. The state actor's actual knowledge is critical to the inquiry—a failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference.

*Whitely v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (citations, internal quotation marks, and brackets omitted).

In sum, without further allegations from which a court could reasonably infer that a policy or custom exists, that a final policymaker actually or constructively knew of its existence, and that the custom or policy served as the moving force behind the alleged constitutional violation, the court cannot reasonably infer that the City is liable for the misconduct alleged and again concludes that Plaintiff's amended allegations fail to state a plausible § 1983 claim against the City. Accordingly, the City's motion to dismiss will be granted.[2]

---

[2] To the extent the Individual Defendants are sued in their official capacity, the court dismisses these claims as redundant of the claims against the City. *See generally Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than

### B.  Plaintiff's Amended § 1983 Claims Against the Individual Defendants

In *Cunningham I*, the court granted the Individual Defendants' motion to dismiss Plaintiff's §1983 claims, finding that "for the reasons set forth by the Individual Defendants[,]" the Complaint was "lacking in specificity to overcome the qualified immunity defense asserted by them." *Cunningham I*, 2014 WL 4851576 at *7.  The court held that "Plaintiff's pleadings at best infer a possibility of wrongdoing on the part of the Individual Defendants; however, pleadings fall short of stating a claim upon which relief can be granted if the court can only infer the 'mere possibility of wrongdoing.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).   Rather than direct Plaintiff to file a detailed reply to address the plea of qualified immunity, *see Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc), the court allowed Plaintiff an opportunity to replead his § 1983 claim against the Individual Defendants.

The Individual Defendants contend that the amended pleadings fail to cure the deficiencies noted in *Cunningham I* and are still insufficient to overcome their entitlement to qualified immunity.  Ind. Defs.' Br. in Supp. of Mot. to Dis.  ("Ind. Defs.' Br.")  (Doc. 24).  In response, Plaintiff argues that the allegations are sufficient to state a claim against the Individual Defendants. Pl.'s Resp. Br.  ¶¶ 5-15 (Doc. 28).

### 1.    Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A

---

name, to be treated as against the entity.  It is not against the official personally, for the real party in interest is the entity.")).

defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Defendants Young, Haber, and Morris have pleaded this defense. *See* Defs.' Ans. to Pl.'s Am. Compl. ¶¶ 47-50 (Doc. 25).

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. If the record sets forth or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id.* The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense.  In the context of qualified immunity, however, this burden varies from the norm.  In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.  We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994).  Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law.  *Anderson*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); *Pierce*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized."  *Malley*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).  Qualified

immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.   Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue.  *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640.  For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce*, 117 F.3d at 882; *Stefanoff*, 154 F.3d at 525.  Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (citations omitted).

### 2.  Discussion

#### a.  Claims Against Defendants Young and Haber

The court will first address whether immunity bars Plaintiff's claims against Defendants Young and Haber.  As already noted, Defendants Young and Haber have asserted a qualified immunity defense.  *See* Defs.' Ans. to Pl.'s Am. Compl. ¶¶ 49-50.   Thus, it is Plaintiff's burden to rebut Defendants' qualified immunity defense.  *See Pierce*, 117 F.3d at 871-72.  To rebut Defendants' qualified immunity defense, Plaintiff must allege a sufficient factual basis from which a reasonable juror could find that "the official's allegedly wrongful conduct violated clearly established law." *Id.*  When the defense of qualified immunity is raised in a motion to dismiss, the complaint is subject to a heightened pleading requirement, which requires "claims of specific

conduct and actions giving rise to a constitutional violation." *Baker*, 75 F.3d at 195 (citing *Shultea v. Wood*, 47 F.3d 1427, 1432, 1434 (5th Cir. 1995) (en banc)).

Plaintiff's § 1983 claim against Defendants Young and Haber is premised on their alleged roles in procuring the warrant with false information that led to his arrest, which Plaintiff contends was without probable cause in violation of the Fourth Amendment.  With regard to Young's and Haber's role in procurement of the arrest warrant, Plaintiff alleges that "upon further investigation and discovery, evidence will show that Young and/or Haber and/or other police officers with the City of Balch Springs Police Department knowingly filed a false affidavit to secure an arrest warrant for [Plaintiff's] arrest when the affiant(s) 1) knew it was false, or 2) would have known it was false had the affiant not recklessly disregarded the truth."  Pl.'s Am. Compl. ¶ 29.  Plaintiff further alleges that even though the One Stop video corroborates his assault claim, "somehow, the Balch Springs police secured an arrest warrant to have [Plaintiff] arrested for making a false report" and "[p]resumably the warrant was obtained by sworn statements made by Balch Springs police officers in an affidavit, claiming that [Plaintiff] made a false report to the police regarding the assault by Ortega."  *Id.* ¶¶ 30-31.  Plaintiff also alleges that, "upon further investigation and discovery the evidence will show that the warrant for arrest was obtained by Young and/or Haber and/or other City of Balch Springs police officers after they knowingly and intentionally, or with reckless disregard for the truth, presented to a Judge an affidavit that contained misleading and/or incorrect assertions of fact." *Id.* ¶ 33.

Even were the court to assume, *arguendo*, that the arrest warrant was based on false statements or omissions, the Fifth Circuit has expressly declined to extend § 1983 liability "beyond the affiant and person who actually prepared, or was fully responsible for the preparation of, the

**Memorandum Opinion and Order - 16**

warrant application . . . with knowledge that a warrant would be based solely on the [faulty affidavit]." *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005) (discussing the extent of liability under M*alley v. Briggs*, 475 U.S. 335 (1986)[3] and finding that district court erred in denying qualified immunity to officers on claims related to the procurement of a warrant, even when officers participated in investigation leading up to issuance of the warrant); *see also Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007) (finding that district court erred in denying qualified immunity to two officers on claims related to procurement of a warrant, as plaintiff did not allege that either officer was the affiant officer or the officer who actually prepared the warrant application with knowledge that the warrant would be based solely on the document prepared); *Jennings v. Patton*, 644 F.3d 297, 301 (5th Cir. 2011) (finding that district court erred in denying qualified immunity to county judge sued under § 1983 for alleged procurement of a warrant based on false statements where county judge was not affiant or the person who actually prepared the warrant application with knowledge that the warrant would be based solely on the document prepared).

In light of this controlling precedent, the court finds that Plaintiff's § 1983 claims against Defendants Young and Haber should be dismissed based on the doctrine of qualified immunity. First, Plaintiff has failed to allege that either Young or Haber was the affiant or that either Young or Haber was responsible for the actual preparation of the allegedly false affidavit or had knowledge that the warrant would be based solely on the purportedly false affidavit. Under these circumstances, the allegations of the First Amended Complaint are simply too threadbare for the

---

[3] In *Malley*, the Supreme Court held that an officer who obtained an arrest warrant based on an affidavit that failed to establish probable cause could be held liable for the resulting unconstitutional arrest notwithstanding the issuing judge's approval of the application. *Malley*, 475 U.S at 343-46.

**Memorandum Opinion and Order - 17**

court to infer that Defendants Young and Haber are liable to Plaintiff, and the court concludes that Defendants Young and Haber are shielded by immunity as to these allegations. *See Michalik*, *supra*; *Hampton*, *supra*.

Further, to the extent Plaintiff seeks to rebut the qualified immunity defense by asserting that Defendants Young and Haber are liable under *Franks v. Delaware*, the court similarly concludes that Plaintiff has failed to allege specific conduct and actions by Young or Haber sufficient to overcome their immunity. In *Franks v. Delaware*, the Supreme Court held that a Fourth Amendment violation is established when an officer "knowingly and intentionally, or with reckless disregard for the truth" makes a false statement that results in a warrant being issued without probable cause. *Franks*, 438 U.S.154, 155-56 (1978). The Fifth Circuit has extended *Franks* to an intentional or reckless omission of material facts from a warrant application that also amounts to a Fourth Amendment violation. *See Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990).

With regard to Plaintiff's *Franks* claim, as is evident from the amended allegations, Plaintiff has failed to point to any specific false statement or omission attributable to either Young or Haber that appeared in the arrest warrant or the arrest warrant application. Absent such allegations, Plaintiff's claim based on a violation of *Franks* fails as a matter of law. *See Michalik*, 422 F.3d at 261 (upholding portion of district court's finding that officers were entitled to immunity from *Franks* liability where "[plaintiffs] identified no false statement attributable to [the officers] that appeared anywhere in the warrant application."); *White v. Wilder*, 2007 WL 3357315, at *4 (S.D. Miss. Nov. 7, 2007) (dismissing *Franks* claim where "plaintiffs [] failed to identify any

false statements made by [the officer] or any statements that were even included in the warrants purportedly at [the officer's] instigation.").

In sum, the court concludes that, viewing all of Plaintiff's well-pleaded facts as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to allege facts with the requisite specificity to overcome Defendant Young's and Defendant Haber's assertion of qualified immunity. Accordingly, the Individual Defendants' motion to dismiss will be granted as to Plaintiff's § 1983 claims against Defendants Young and Haber.

### b. *Defendant Morris*

Based on the allegations in the First Amended Complaint, the court concludes that Plaintiff is seeking to recover against Morris under a theory of supervisory liability. *See* First Am. Compl. ¶¶ 39-40, 46-50. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). To establish liability against a supervisory official, such as Morris, the plaintiff must show that: "(1) the [supervisory official] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights."[4] *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citation omitted). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional

---

[4] The First Amended Complaint also alleges that Morris was the city manager of the City at the time of the incident made the basis of this lawsuit. Pl.'s Am. Compl. ¶ 6. To the extent that Plaintiff contends that Morris was acting in his capacity as a supervisory official as city manager over the City's police department, the same standard applies as that for a supervisory police chief. To the extent that Plaintiff intimates that Morris is a policymaker, his argument fails for the reasons set forth in Section III(A) of this opinion.

**Memorandum Opinion and Order - 19**

rights is normally required before such a lack of training or supervision constitutes deliberate indifference." *Thompson*, 245 F.3d at 459 (citation omitted).

Defendant Morris has asserted a defense of qualified immunity to this lawsuit. *See* Defs.' Ans. to Pl.'s Am. Compl. ¶ 48 (Doc. 25). Thus, Plaintiff has the "burden to rebut this defense by establishing that [Morris's] allegedly wrongful conduct violated clearly established law." *Pierce*, 117 F.3d at 872 (citation omitted). Plaintiff has failed to meet this burden. Other than the allegation that Morris was the "Police Chief" and "City Manager of the City of Balch Springs" at all relevant times, *see* First Am. Compl. ¶ 6, the remaining allegations that mention Morris are far too general and conclusory to state a § 1983 claim against him based on a theory of supervisory liability. *See id.* ¶¶ 39-40, 46-50. With regard to any failure to train or supervise by Morris, Plaintiff fails to set forth allegations concerning more than this one instance. *See id.* ¶ 46. Further, Plaintiff fails to make any factual allegations of deliberate indifference, or allege facts from which the court can reasonably infer deliberate indifference to Plaintiff's constitutionally protected rights. *See supra* Sec. III.A.2. (setting forth standard for "deliberate indifference").

For the foregoing reasons, the court concludes that Plaintiff has failed to state a § 1983 claim against Defendant Morris. Accordingly, the Individual Defendants' motion to dismiss will be granted as to Plaintiff's § 1983 claim against Defendant Morris.

## IV.     State Law Assault Claim Against Defendant Ortega

In *Cunningham I*, the court did not address Plaintiff's state law assault claim against Defendant Ortega, as Ortega, unlike the other Defendants, did not file a motion to dismiss. In the First Amended Complaint, Plaintiff again pleads a state law claim for assault against Defendant

Ortega.  Ortega has not filed any motion with regard to this claim.  Accordingly, Plaintiff's state law assault claim against Defendant Ortega remains.

Although remand pursuant to 28 U.S.C. § 1447(c) is not available, the court concludes that this case should not remain in federal court.  As a result of the court's decision dismissing Plaintiff's federal claims, only Plaintiff's state law claim against Defendant Ortega remains.  The court has jurisdiction over the state law claim only through supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Now that the federal claims have been dismissed, the court has discretion whether to retain the remaining claim.  28 U.S.C. § 1367(c)(3); *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 395 (5th Cir. 1992).  The relevant considerations are "judicial economy, convenience, fairness and comity."  *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).  The strongest consideration here is that the state courts are more familiar with, and better equipped to address, the state law cause of action remaining.  Further, this case is in its initial stages, and no discovery has taken place.  For these reasons, the court exercises its discretion and declines supplemental jurisdiction over the remaining state law claim.

## V.   Amendment of Pleadings

Plaintiff requested and was granted leave to amend his pleadings after Defendants moved the first time to dismiss his claims.  While the First Amended Complaint is longer than Plaintiff's Original Petition, the live pleading does not cure the deficiencies noted by the court in *Cunningham I* and fails to state claims against the City and Individual Defendants upon which relief can be granted.  Plaintiff has not requested to further amend his pleadings; rather, he steadfastly maintains in response to the motions to dismiss that his claims, as pleaded, are sufficient.  The court, therefore, concludes that Plaintiff has pleaded his "best case" and will not allow him an opportunity

to further amend his pleadings.  *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir.2003).  Moreover, allowing Plaintiff to further amend will unnecessarily delay resolution of this action.

## VI.    Conclusion

For the reasons herein stated, the court **grants** Defendant City of Balch Springs' 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (Doc. 21), and **grants** Defendants Young, Haber & Morris' 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (Doc. 23).  Plaintiff's § 1983 claims against the City and against Defendants Young, Haber, and Morris are hereby **dismissed with prejudice**.[5]  Further, in light of Plaintiff's abandonment of his state law malicious prosecution claim, *see supra* note 1, Plaintiff's malicious prosecution claim is **dismissed with prejudice**.  Remaining is Plaintiff's state law assault claim against Defendant Ortega.  For the reasons previously stated, *see supra* Sec. IV, the court exercises its discretion and declines to exercise supplemental jurisdiction over this state law claim.  Accordingly, the court *sua sponte* **remands** Plaintiff's state law claim of assault to the 14th Judicial District Court of Dallas County, Texas.  The clerk of court is hereby directed to effect the remand in accordance with usual procedure.

---

[5] The City and the Individual Defendants include a request for attorney's fees under 42 U.S.C. § 1988 in their respective motions.  In a suit to enforce § 1983, the court may, in its discretion, grant the prevailing party reasonable attorney's fees and related expenses.  *See* 42 U.S.C. § 1988(b).  While a prevailing plaintiff in a § 1983 action is usually entitled to an award of fees under § 1988, "prevailing defendants cannot recover § 1988 fees without demonstrating that the plaintiff's underlying claim was frivolous, unreasonable or groundless." *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009) (citation omitted).  No such showing has been made at this juncture.  If Defendants believe they are entitled to attorney's fees, they may file such a request postjudgment pursuant to Federal Rule of Civil Procedure 54(d)(2).

**It is so ordered** this 19th day of June, 2015.

Sam A. Lindsay
United States District Judge