IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **MICHAEL CUNNINGHAM,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:14-CV-59-L** |
| § | |
| **CITY OF BALCH SPRINGS, JAMES** § | |
| **YOUNG, JONATHAN HABER,** § | |
| **WILLIAM MORRIS a/k/a Ed Morris,** § | |
| **and EDWARD ORTEGA,** § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment (Doc. 44), filed May 4, 2016. Having considered the motion, response, reply, summary judgment evidence, record, and applicable law, the court **denies** Defendants' Motion for Summary Judgment.

**I.     Background**

This lawsuit arises from the December 7, 2011 arrest of Plaintiff Michael Cunningham ("Plaintiff" or "Cunningham") by City of Balch Springs police officers who, acting pursuant to a warrant, arrested him at his home and charged him with the offense of making a false report of assault to a police officer in violation of Section 37.08 of the Texas Penal Code, a Class B misdemeanor. This offense is punishable by a fine not to exceed $2000, confinement in jail not to exceed 180 days, or both. Tex. Penal Code Ann. § 12.22. On December 3, 2011, Cunningham, a City of Balch Springs employee, reported to City of Balch Springs police officers that Edward Ortega ("Ortega"), also a City of Balch Springs employee, had assaulted him with a tire iron in the parking lot of a One Stop convenience store located at 3708 Sheperd Lane, Balch Springs, Texas

**Memorandum Opinion and Order - Page 1**

("One Stop"). Based on Cunningham's report, Ortega was arrested. The City of Balch Springs dropped the assault charges and released Ortega a few days later after obtaining a warrant for the arrest of Cunningham on charges that his report that Ortega assaulted him was false.

Cunningham filed this action on November 27, 2013, in the 14th Judicial District Court, Dallas County, Texas, against the City of Balch Springs ("the City"), James Young ("Young"), Jonathan Haber ("Haber"), William Morris, a/k/a Ed Morris ("Morris"), and Ortega. Cunningham alleged, among other things, that City of Balch Springs police officers, in violation of his constitutional rights, knowingly used false information and fabricated evidence to procure the issuance of the warrant for his arrest. The City, Young, Haber, and Morris removed this action to federal court on January 9, 2014, on the basis that the action involves a federal question. All Defendants, except Ortega, filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court granted the motions to dismiss, but allowed Cunningham a chance to replead. *See Cunningham v. City of Balch Springs*, 2014 WL 4851576 (N.D. Tex. Sept. 30, 2014) (Lindsay, J.) ("*Cunningham I*").

On October 21, 2014, Cunningham filed his First Amended Complaint asserting claims under 42 U.S.C. § 1983 and state law against the City, Young, Haber, and Morris, and state law claims for assault against Ortega. *See* First Am. Compl. (Doc. 19). Following renewed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by the various Defendants, the court dismissed all claims against the City and Morris, dismissed Cunningham's state law and §1983 claims against Young and Haber, remanded the assault claim against Ortega to state court, and entered a final judgment dismissing Cunningham's claims. *See Cunningham v. City of Balch Springs*, 2015 WL 3822212 (N.D. Tex. June 19, 2015) (Lindsay, J.) ("*Cunningham II*").

**Memorandum Opinion and Order - Page 2**

On July 17, 2015, Cunningham moved for a new trial, which the court construed as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). While the court denied the motion with respect to Cunningham's claims against the City and Morris, the court granted the motion with respect to his § 1983 claims against Officers Haber and Young. The court set forth its reasoning, as follows:

> With regard to Plaintiff's § 1983 claims against Officers Haber and Young, however, the court concludes that Plaintiff's motion should be granted. Plaintiff's § 1983 claim against Defendants Haber and Young is premised on their alleged roles in procuring the warrant with false information that led to his arrest, which Plaintiff contends was without probable cause in violation of the Fourth Amendment. With regard to Young's and Haber's role in procurement of the arrest warrant, Plaintiff alleges that "upon further investigation and discovery, evidence will show that Young and/or Haber and/or other police officers with the City of Balch Springs Police Department knowingly filed a false affidavit to secure an arrest warrant for [Plaintiff's] arrest when the affiant(s) 1) knew it was false, or 2) would have known it was false had the affiant not recklessly disregarded the truth." Pl.'s Am. Compl. ¶ 29. Plaintiff further alleges that even though the One Stop video corroborates his assault claim, "somehow, the Balch Springs police secured an arrest warrant to have [Plaintiff] arrested for making a false report" and "[p]resumably the warrant was obtained by sworn statements made by Balch Springs police officers in an affidavit, claiming that [Plaintiff] made a false report to the police regarding the assault by Ortega." *Id.* ¶¶ 30-31. Plaintiff also alleges that, "upon further investigation and discovery the evidence will show that the warrant for arrest was obtained by Young and/or Haber and/or other City of Balch Springs police officers after they knowingly and intentionally, or with reckless disregard for the truth, presented to a Judge an affidavit that contained misleading and/or incorrect assertions of fact." *Id.* ¶ 33.
>
> Upon reconsideration, the court concludes that at the motion to dismiss stage of these proceedings, and upon further review of the allegations in the First Amended Complaint pertaining to Officers Haber and Young, Plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity. Further, under these circumstances, the district court may "allow discovery necessary to clarify those facts upon which the immunity defense turns." *Wicks v. Mississippi State Employment Svcs.*, 41 F.3d 991, 995 (5th Cir. 1995); *see also Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir,. 1987). The court will re-assess whether these officers are entitled to qualified immunity after limited discovery necessary to clarify the facts relevant to this inquiry. Such discovery shall be "narrowly tailored to uncover only those facts needed to rule on the immunity claims[.]" *Lion Boulos*, 834 F.2d at 507.

**Memorandum Opinion and Order - Page 3**

*Cunningham v. City of Balch Springs*, 2016 WL 235966, at *3 (N.D. Tex. Jan. 20, 2016) (Lindsay, J.) ("*Cunningham III*").[1]

Following the limited period of discovery, on May 4, 2016, Defendants Haber and Young (sometimes collectively, the "Officers") filed their Motion for Summary Judgment (Doc. 44), asserting that "the evidence in this record establishes that no deprivation of Plaintiff's legal rights occurred as alleged and therefore the issue of qualified immunity need not be reached." Doc. 44 at 2. Alternatively, Defendants argue that they are entitled to summary judgment based on qualified immunity because "reasonable officers in the shoes of said Defendants could have believed that the action of Defendants were lawful and consistent with the preservation of Plaintiff's legal rights." *Id.* Cunningham has filed an opposition to the Motion for Summary Judgment, arguing that the evidence obtained during discovery is sufficient to raise a genuine dispute of material fact as to whether the Officers acted in an objectively unreasonable manner in violation of his clearly established Fourth Amendment right to free from unreasonable seizure of his person.

## II. Applicable Legal Standards

### A. Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640

---

[1] The court incorporates by reference *Cunningham I*, *Cunningham II*, and *Cunningham III*, as if herein fully set forth.

**Memorandum Opinion and Order - Page 4**

(1980). Defendants Haber and Young have asserted this defense in their Motion for Summary Judgment.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. If the record sets forth or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id.* The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

**Memorandum Opinion and Order - Page 6**

Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341.  Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue.  *Foster*, 28 F.3d at 429.  To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640.  For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays County*, 154 F.3d at 525.  Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts … to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted).  Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).

**B.     Summary Judgment**

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment

evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Analysis

Cunningham contends that his arrest was unreasonable and violated the Fourth Amendment, because the warrant leading to his arrest was based on fabricated evidence and false statements by Defendants Young and Haber, rather than probable cause. The court first addresses whether Cunningham has alleged a violation of clearly established law. Following that inquiry, the court will turn to whether, based on the evidentiary record, Cunningham has met his burden of raising a genuine dispute of material fact that the Officers' conduct was objectively unreasonable in light of

that clearly established law such that they would not be entitled to qualified immunity.

### A. Clearly Established Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. "A person is seized" whenever officials "restrain[ ] his freedom of movement" such that he is "not free to leave." *Manuel v. City of Joliet, Ill.*, No. 14-9496, 2017 WL 1050976, at *5 (U.S. Mar. 21, 2017) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). The right to be free from arrest without probable cause was clearly established when Cunningham was arrested. *See Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975). Equally well-established was the law that a Fourth Amendment violation occurs when an officer "knowingly and intentionally, or with reckless disregard for the truth" makes a false statement that results in a warrant being issued without probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978);[2] *see also Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990). Defendants Haber and Young do not dispute that the law that Cunningham alleges they violated was clearly established at the time of his arrest. *See* Defs.' Mot. for Summ. J. ¶ 9.

Instead, Defendants argue that "Plaintiff's Fourth Amendment claim fails because the record established that no genuine dispute of material fact exists on the claim or upon Defendants' qualified immunity defense." *Id.* ¶ 14. To rule on Defendants' motion, the court must first consider the evidence, viewed in the light most favorable to Cunningham, the nonmoving parry.

---

[2] In *Franks v. Delaware,* 438 U.S. 154 (1978), the Supreme Court held that if an officer, in an affidavit supporting a warrant, makes a false statement knowingly and intentionally, or with reckless disregard for the truth, the false statements must be disregarded in determining whether the affidavit is sufficient to support a finding of probable cause. *Id.* at 171-72. The holding in *Franks* applies to omissions as well. *United States v. Thompson,* 615 F.2d 329 (5th 1980).

**Memorandum Opinion and Order - Page 10**

### B.     The Factual Record

The first step in determining the constitutionality of the Officers' actions is to determine the relevant facts. Cunningham's version of the facts differs markedly from that of the Officers. On summary judgment, the court is required to view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment, Cunningham. *Saucier*, 533 U.S. at 201. In this case, the evidence includes a videotape of the events in question taken at One Stop on December 3, 2011. Both parties submit a copy of the videotape as part of their evidence. *See* Ex. C to Defs.' App. in Supp. of Summ. J. Mot. ("Defs.' App.") ("One Stop videotape"); Ex. F to Pl.'s App. in Opp'n to Summ. J. Mot. (Pl.'s App.") ("One Stop videotape"). The evidence also includes a copy of a videotape of the interview of Cunningham by Defendant Young, assisted by Defendant Haber. Ex. D to Pl.'s App. Viewed in the light most favorable to Cunningham, the material facts are as follows:

On December 3, 2011, the Balch Springs police department received a 911 call about an altercation between a Black man (Cunningham) and a Hispanic man (Ortega), in which "Ortega had a pipe and was trying to hit" Cunningham. Pl.'s App. 62. Testimony from Haber showed that Balch Springs police officer Jupp originally responded to the call at One Stop. Officer Jupp viewed the One Stop videotape and found that it confirmed Plaintiff's report that Ortega assaulted him with a weapon. The existence of probable cause that Ortega had committed the offense of aggravated assault with a deadly weapon was approved by an officer with the Balch Springs police department and the arrest narrative cites the One Stop videotape as evidence substantiating the assault charge against Ortega. The "pipe," also described as a "jack hammer" or "tire iron," used by Ortega in the incident was collected as evidence of the assault. Upon questioning of Ortega by Sergeant Rumsey,

who asked him, "why he tried to hit [plaintiff] with a pipe," according to the arrest narrative Ortega responded, "[H]e made me mad." *Id.* Ortega was arrested on December 3, 2011, by Sergeant Rumsey, based upon the factual evidence available that Ortega committed the offense of assault against Cunningham.

According to the sworn testimony of Haber, he received a telephone call the Monday morning after the weekend arrest from his superior, then-Chief Morris, who called to ask Haber why Ortega was arrested. Haber testified he found out about Ortega's arrest as a result of that call. Haber then assigned Young to investigate the issue. Haber testified that he and Young worked side by side on the investigation leading to Plaintiff's arrest, and that they made the major decisions regarding the case.

Haber and Young reviewed the One Stop videotape and concluded that it did not support Cunningham's report to police that Ortega had assaulted him. In his affidavit submitted in support of Defendants' Motion for Summary Judgment, Haber states: "Mr. Cunningham claimed that Ortega assaulted him in a specific manner by swinging a tire iron at him . . . However, when I viewed the video of the incident (the One Stop video), it was clear that this did not happen." Defs.' App. 2. At his deposition, Young testified that Cunningham's statement that Ortega "swung" the tire iron was not consistent with what Young saw when he watched the One Stop videotape or with Young's definition of the word "swing." According to Young, "What I actually saw, when it came to the tire iron, is [Ortega] raised the tire iron and flinched his body forward." *Id.* at 47. Young testified further that his "definition of swung is that he physically came after me and really tried to hit me with the tire iron." *Id.* at 46. Stating that they wanted to clear up the discrepancies, the Officers requested that Cunningham come to the Balch Springs police department to be interviewed. Young

**Memorandum Opinion and Order - Page 12**

and Haber interviewed Cunningham in the police station in a small interrogation room. Following the interview, Cunningham was arrested for filing a false report because the Officers stated that Cunningham "confessed" during the interview that he lied about the assault. The Officers both testified at their respective depositions that Cunningham's "confession" during the interview removed any possible doubt that they had probable cause to believe Cunningham was guilty of the crime of filing a false report.[3]

The court has reviewed the videotapes in the record and concludes that the events in the videotapes flatly contradict the version of the events presented by the Officers, as well as the information included in the affidavit of probable cause that resulted in the issuance of the arrest warrant for Cunningham, all of which Defendants rely upon to support their Motion for Summary Judgment. *See* Defs.' App. 1-55.[4]

The One Stop videotape shows a markedly different set of events from that described by the Officers, *supra*. The videotape shows Cunningham arriving at the One Stop and meeting Ortega, after which an altercation ensues between them behind a black SUV. Although partially obstructed by the SUV, it appears that Cunningham pushes Ortega. The videotape then shows Cunningham retreating to his vehicle as Ortega heads toward a different vehicle in the parking lot and retrieves what appears to be a tire iron, sometimes called a jack handle. It shows Ortega then advancing toward the driver's side door of Cunningham's vehicle, where Cunningham is standing, walking

---

[3] Although it is unclear from the record when it occurred (before or after the interview of Cunningham), Ortega was released, and the assault charges against him were dropped.

[4] In the Affidavit for Arrest Warrant or Capias, the Affiant states that his belief that Cunningham committed the offense of filing a false report of assault is based on facts and information provided to him by "J. Young #446, Investigator, Balch Springs Police Department who participated in the investigation of the alleged offense[.]" *See* Ex. A to Defs.' App. in Supp. of Summ J. 7 (Affidavit for Arrest Warrant or Capias).

**Memorandum Opinion and Order - Page 13**

toward Cunningham aggressively and rapidly raising the tire iron over his head with his right arm while extending his left arm toward Cunningham, and quickly bringing his body and the tire iron forward. The videotape shows Cunningham stepping backward and raising his arms in a defensive manner. The videotape then shows Ortega repeat the same act, albeit in a slightly less threatening manner than the first time. Ortega then reaches out with his left arm and pushes the driver's side door into Cunningham. Ortega next circles Cunningham's vehicle and opens the passenger side door and exchanges words with Cunningham. Cunningham then leaves the scene in his vehicle.

The undersigned and members of court staff collectively viewed the One Stop videotape and all agreed that, without a doubt, Ortega raised the tire iron over his head with his right arm while extending his left arm toward Cunningham, while walking aggressively toward Cunningham and moving the tire iron forward, and that Cunningham held up his hands and stepped back in a defensive manner. This is the same videotape relied upon by Balch Spring police officers as evidence substantiating the assault charge against Ortega. *See* Pl.'s App. 62.

Young in his deposition testimony characterizes Ortega's movement as a "flinch," *see supra*. The verb "flinch" means "to withdraw or shrink from or as if from pain: wince; *also*: to tense the muscles involuntarily in anticipation of discomfort." Merriam-Webster's Collegiate Dictionary 479 (11th ed. 2014). A synonym for "flinch" is "recoil." *Id.* Young's testimony that Ortega "flinched" is clearly contradicted by the videotape, as described by the court above. The videotape shows that it was Cunningham who recoiled or flinched, not Ortega. Contrary to Young's statement, by definition, one does not flinch forward.

Further, the court has viewed the videotape of the Officers interviewing Cunningham. Nowhere in the videotape can Cunningham be heard to "confess" that Ortega did not assault him

**Memorandum Opinion and Order - Page 14**

with the tire iron. In addition, Young tells Cunningham during the interview that he does not see an "assault." This statement strains credulity. If any reasonable person were rapidly approached by an individual with a tire iron in the manner in which Ortega approached Cunningham, that person would feel threatened and take defensive action as did Cunningham. The court does not know why both Haber and Young do not believe that an assault occurred; however, their belief is quite beside the point, as the One Stop videotape clearly shows otherwise.

After the first fifteen minutes of the interview, it is clear to the court that the Officers appear, for whatever reason, intent on determining that Ortega was not culpable. Why this approach was taken against Cunningham, who admitted several times that he was "slow," and that in school he was put in "slow-learning classes" is beyond the court's comprehension. Moreover, the court does not understand why the Officers insisted on making Cunningham out to be a liar because he used the word "swing" and "swung" to describe Ortega's actions with the tire iron. As previously stated, the One Stop videotape shows that Ortega advanced toward Cunningham rapidly and aggressively while, at the same time, raising the tire arm with his right arm over his head and extending his left arm toward Cunningham, while making a quick movement toward Cunningham with his body and the tire iron.

Ortega's actions constitute assault. Under Texas law, a person commits an assault if he or she "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code Ann. § 22.01(a)(2). Such offense, at a minimum, is a Class C misdemeanor. *Id.* § 22.01(c). If a person "uses or exhibits a deadly weapon during the commission of the assault," the offense, at a minimum, is a felony of the second degree. *Id.* §§ 22.02(a)(2), 22.02(b). A Class C misdemeanor

**Memorandum Opinion and Order - Page 15**

is punishable by a "fine not to exceed $500." *Id.* § 12.23.  A felony of the second degree is punishable by a term of imprisonment from two to twenty years confinement.  *Id.* § 12.23.

Further, the Officers' questions during their interview of Cunningham and their assessment of Cunningham's complaint are utterly discredited by the One Stop videotape such that no reasonable jury would conclude that the Officers' conduct was objectively reasonable to justify their decision to file charges against him for making a false report, charges which were later rejected by the Dallas County District Attorney.  While the videotape of the interview shows that Cunningham had some minor inconsistencies regarding the sequence of events that took place in the One Stop parking lot, and what occurred during the events, those discrepancies or minor inconsistencies in no way overshadow the story told by the One Stop videotape.  When the facts set forth by a party are overshadowed and clearly contradicted by what is shown on a videotape, a court is required to view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).  This is precisely what the court has done in this case.

The Officers place undue emphasis on Cunningham's statement that he pushed Ortega.  The One Stop videotape shows some physical scuffling between Ortega and Cunningham behind a SUV; however, one cannot see the entire incident because the SUV partially obstructs the incident, which lasted a few seconds.  After this brief encounter, Cunningham goes to the driver's side of his pickup, and Ortega goes to a vehicle and takes out a tire iron or jack handle.  Ortega then goes around the back of Cunningham's truck, walks past the passenger's side and around the front of Cunningham's pickup, and confronts Cunningham as previously described.  Ortega's action clearly shows that he is the aggressor.  Whatever occurred behind the SUV was over, and Ortega restarted the incident by threatening Cunningham with a deadly weapon, one capable of causing death or serious bodily

injury. At the time of this confrontation, nothing indicates that Cunningham threatened or used force against Ortega. Had Ortega not approached Cunningham with a tire iron, he would not have been arrested for aggravated assault. Any suggestion by the Officers that Cunningham provoked Ortega is of no moment, as provocation cannot be used to justify assault. Moreover, Officer Jupp, who responded to the 911 call, viewed the One Stop videotape, and the arrest narrative cites the One Stop videotape as evidence substantiating the charge against Ortega. Pl.'s App. 61-62. Based on what the court has reviewed, a reasonable jury could conclude that the Officers' conduct and decision to charge Cunningham with filing a false report were objectively unreasonable. In other words, a reasonable jury could conclude that Young and Haber were "plainly incompetent" or "knowingly violate[d] the law" when they made the decision to charge Cunningham with filing a false report. *Malley v. Briggs*, 475 U.S. at 341.

     In sum, viewing all the evidence in the light most favorable to Cunningham, the nonmoving party, and in light of the videotapes in the record that flatly contradict the evidence submitted by the Officers, the court determines that Cunningham has raised a genuine dispute of material fact as to whether the Officers acted in an objectively unreasonable fashion under clearly established law by providing knowingly false information in support of a warrant that resulted in Cunningham's arrest. As such, the court concludes that the Officers are not entitled to summary judgment based on qualified immunity at this time. Rather, this matter will be tried before a jury that will be tasked with hearing the evidence, making credibility determinations, and determining whether Cunningham prevails on his constitutional claim and whether the Officers are entitled to qualified immunity.

## IV. Conclusion

For the reasons herein stated, the court determines that Cunningham has raised a genuine dispute of material fact as to his constitutional claim to be free from illegal and unreasonable seizures and Haber's and Young's affirmative defense of qualified immunity. Accordingly, the court **denies** Defendants' Motion for Summary Judgment (Doc. 44).

**It is so ordered** this 31st day of March, 2017.

Sam A. Lindsay
United States District Judge